13L 560
3pi 761

WAGNER *v.* SMITH *et al.*

1. VENDOR'S LEIN. Where a suit has been commenced to enforce a vendor's lien, none being reserved on the face of the deed, the equity fastens on the land and no creditor can intervene to defeat the right under that proceeding.

2. FRAUDULENT CONVEYANCES. The test as to whether a conveyance is fraudulent or void as to a creditor is: Does it hinder him in enforcing his debt? Does it deprive him of a right which would be legally effective if the conveyance or devise had not been resorted to?

FROM JOHNSON.

Appeal from the Chancery Court at Taylorsville. H. C. SMITH, Ch.

J. P. SMITH, H. M. FOLSOM and C. J. St. JOHN for complainant.

N. M. TAYLOR and R. R. BUTLER for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill is filed in the nature of an action of ejectment to recover possession of a tract of land described in the pleadings.

The facts substantially are, that Ezekiel Smith, the father, made a conveyance of land of date 1863, but not delivered or acknowledged and registered until 1866, to his son, A. T. Smith, conveying the tract of land about which this controversy is had.

This deed on its face, after describing the land, conveys it to said A. Smith, "to have and to hold the

same to the said A. T. Smith and his heirs forever, with full covenants of seizin and general warranty." The consideration expressed on its face, is the sum of "$2,500 to be paid in good and lawful money," the terms and times of payment not further stated.

On the back of this deed, and acknowleged before the same witnesses, on the same day, to-wit, November 17, 1866, is found the following collateral obligation of the said A. T. Smith:

"I, Andrew T. Smith, hereby bind myself and my heirs, unto Ezekiel Smith, in the sum of $2,500, void on condition that I keep the land conveyed in the writing, and not sell or convey the same in the lifetime of Ezekiel Smith, my father, and take care of him—also of my oldest sister Nancy Anne E. Smith, all with kindness and proper attention.

Given under my hand, this 17th of November, 1866.

[Seal.] A. T. SMITH.

This obligation was duly proven and registered at the time and with the deed of conveyance, and as shown on its face, was written on the back of it.

In April, 1868, Ezekiel Smith filed his bill in the chancery court, stating the fact of the conveyance to the son for the sum of $2,500; $1,000 to be paid in a short time after the sale, balance to be paid either before his death, or after the death of the complainant, to his heirs. In addition to this, he charged the contract to take care of and provide for the father, and the daughter (who was imbecile), during their lives. He then alleged a total failure on the part of A. T. Smith to comply with his contract, by providing or taking care of himself and daughter— and further, "that not one dollar of the purchase money had been paid, not so much even as the interest."

36—VOL. 13.

On these charges he bases the theory that the contract has been forfeited, and he entitled to be restored to the possession of the land, and this is the special prayer of the bill, but a general prayer is added, "that on final hearing, your orator have such other and different relief, as he may be entitled to in equity and good conscience, and an injunction to restrain defendant from, in any way, disposing of said land."

A fiat for injunction as prayed for was granted by Judge Luckey, the then chancellor of the district, and injunction bond given, but the issuance of an injunction in fact does not appear, as no proof either of subpœna or injunction is copied in the record filed as evidence in the cause. We must presume the clerk did his duty and issued the writ, as no doubt he did. At any rate, A. T. Smith filed an elaborate answer to this bill, in which he admits that the sale was made "on the cash terms stated, and that no part of the purchase money had been paid," as he says for the simple reason that no part thereof had been demanded or required to be paid, and that this was required.

He then admits the execution of the obligation by himself, and that the deed was not delivered until 1866. He then contests the charges of failure to comply with this obligation by elaborate statements of the transactions between him and his father, and gives as the true reason of the controversy between them, that the old man desired to marry a woman of disreputable character, he being perhaps about eighty years old, and he having opposed this improper alliance.

After this he insists, that even if he had failed to comply with his part of the contract, it was no cause for revocation of the solemn deed of the father. He then insists, that his failure to pay the purchase monev admitted as he says to be due, under the circumstances, furnishes no ground for rescission of the conveyance.

As to the penalty of the bond, he urges a demurrer to this branch of the case on the ground that it was a matter triable at law. This demurrer was never acted upon by the court, but abandoned.

This case continued in court, considerable proof having been taken *pro* and *con*, up to the first day of December, 1875, the chancellor being incompetent to try it, when a compromise was agreed on between the parties, and filed with the clerk and master of the chancery court on third day of same month.

· That agreement of compromise is as follows:

"Whereas, I, Ezekiel Smith, filed a bill in the chancery court of Johnson county, against A. T. Smith for a tract of land in said county of 200 acres, and it has been of long standing, therefore this is agreed upon as a compromise. I, A. T. Smith, have agreed to convey the land back to E. Smith for the consideration of the purchase money, which is $3,100, and I, E. Smith, agree to pay the cost of the suit, and return all claims against A. T. Smith in relation to said suit in this court, this December 1, 1875.

(Signed.)                                      EZEKIEL SMITH.

At February term (the next), 1876, a decree was entered reciting the fact that the controversy had been settled by agreement of compromise signed by complainant, which agreement was ordered to be filed in the cause, and decree against Ezekiel for cost, with his surety, and execution ordered.

Complainant is creditor of A. T. Smith, who holds a sheriff's deed for the land in controversy, based on levy of execution in favor of Andrew Cable, issued on 10th of January, a judgment by motion having been had in his favor against A. T. Smith on that day, he having paid a debt on which he was bound for Smith and another. The land was regularly condemned by order of the circuit court, and sold, and complainants have redeemed from the purchaser, as a creditor, and now seeks by this bill possession of the land occupied by A. T. Smith's wife and children, on the title thus obtained.

It is charged that the land was conveyed by A. T. Smith to Eezekiel Smith, in pursuance of the compromise, and other considerations stated, and then he conveyed all but seventy-four acres immediately back to the wife and children of the son, and that the levy was made before the conveyances were complete. The theory of the bill is, that the land in the possession of A. T. Smith, under the deed was subject to the debts of A. T. Smith, that Ezekiel took the seventy-four acres in full of his debt, and then balance was A. T. Smith's, and this conveyance first to the father, and then back to the wife and heirs of the son, was fraudulent and void as to creditors, and therefore interposed no obstacle to the levy of the execution—at any rate complainant is entitled to have the judgments in their favor fastened on the land, and if their deed is not valid, a sale of it. for their satisfaction.

The Referees report, the conveyance to A. T. vested

him with absolute title, and the land liable to levy, and the title of complainant complete, the conveyances to E. Smith and to Mrs. Smith void for fraud.

The respondents file various exceptions, very inartificially drawn, the main exception, however, intending to controvert the fact assumed by the Referees, that the deed was an absolute, unconditional conveyance of the land to the son, and insisting the land was liable for the purchase money, as well as the obligation of the bond of A. T. Smith. This is the substance of the exceptions.

If this exception is treated as sufficient, it raises the question, as to what was the interest of A. T. Smith in the land at the time of the levy, and to controvert its liability to levy, except subject to the payment of the purchase money, and compliance with the obligation within on the deed, and in this view presents the question as to what title on the facts of record complainant has obtained by the sale, purchase, and subsequent redemption; unfortunately the argument has been directed mainly to objections to the judgments, levy, redemption and other proceedings, all of which have nothing in them.

Assuming the exception raises the question on the facts stated, whether complainants have got a title which can be enforced against the conveyee of the father, because the said conveyance of the father to the son's wife was fraudulent, as being intended, and having the effect to hinder and delay the son's creditors, or was voluntary on the part of the son, and controverting this because of the existence of the lien

for unpaid purchase money; we proceed to dispose of the question on the facts shown in the record, and stated in the bill of complainant.

The theory of the bill is that Ezekiel Smith compromised his suit by taking seventy-four acres of land in satisfaction of his claims, and that left the balance owned by the son, and that his conveyance of the entire tract to the father, with the understanding that the father should convey to his wife and her heirs, was a mode of making a voluntary settlement of the balance of the land on his wife.

It is true the old man in one sentence of his testimony does say, the seventy-four acres was accepted by him in full satisfaction of the purchase money due him for the whole tract, but this is not all he says, taking it altogether it is clear he only means that this was all that he retained for himself, which was the fact, but he goes on to state the entire agreement to have been that while he reserved this amount to himself, he was to convey the balance to the wife, and the son was to convey the entire tract to him. He is complainant's witness, and he has brought out the whole transaction. In addition he is made to file a written statement before made by which he gives the other terms of the compromise agreement, giving him the privilege of timber, and having his grinding done by a mill on the land conveyed to the daughter, and that he had given up his two notes for the purchase money, on A. T. Smith.

On cross examination, he says it was his intention to accept the whole of the farm (by which he means

land) in full payment of the purchase money, this was all the chance I had, whether I was willing or not. He further distinctly says, that he considered he was giving the son's wife and children a home, and that he never would have agreed to convey any portion of it to the son, giving as a reason that he would run through with it, and that he thought he was only getting back his own land.

The case then stands thus: The father had filed his bill charging the purchase money of $2,500, with interest was due and unpaid, and the obligations of the bond of the son, not kept, on which he had based a prayer for special relief, asking a rescission of the conveyance, but with a general prayer for such other and different relief, as he might be entitled to on the facts charged. The son and vendee had answered admitting the purchase money unpaid, but denying the right to the rescission asked. In this he was correct, but in the facts charged, and admitted by the answer, beyond question under the general prayer of the bill, the complainant was entitled to have the vendor's lien enforced, and the land sold for its payment.

In this state of the case a compromise is agreed on, by which the father is to give up his notes for the purchase money and the obligation of the son—the son to reconvey the whole tract to him—he to receive seventy-four acres to himself, and to convey balance, say of about 150 acres to his son's wife and children. It is clear he would not have compromised the case if the son was to have the land, or he had been required to convey it to him, but being about eighty-

five years old he was willing to give it to his daughter-in-law and her children, after reserving the home and seventy-four acres for himself. Before this conveyance is effected the creditor intervenes, and levies on the land as the land of the son; under this sale complainant claims title. What did the purchaser get? Unquestionably only what the son had—no more, no less: See *Chitwood* v. *Trimble,* 2 Baxt., 78. He had the legal title subject to the obligation of the bond, it having been registered at the time and as part of the consideration of the sale to him. It stood like the defeasance in a regular mortgage. The purchase money was unpaid and the deed conveying the title being absolute—a lien not having been retained in the deed—if the case stood alone on that, under some theories found in our cases, there might have arisen a serious question affecting the rights of the parties. But the vendor had filed his bill—had an injunction forbidding the sale of the land by the vendee, and was entitled under that proceeding to have the land sold for the payment of the purchase money. This suit was a *lispendens* at the time of the levy on the 10th of January, 1876. The compromise was entered into on the 1st of December, 1875, and filed in chancery clerk's office, but the decree in pursuance of it not made by the court until January after the levy. Before this decree was entered, the son, in pursuance of the compromise, conveyed to the father and he conveyed, as a. gift, to the wife and grand-children. Concede it was done at request and by the assent of the son, but that it was part of the terms of the com-

promise, and conveyances made merely to effectuate that,. then the question is was the transaction on the facts stated, fraudulent and void as to these creditors or any creditors of the son?

Whatever view may be held as to the vendor's implied lien—none being reserved on the face of the deed—in a contest with a creditor of the vendee, all our cases agree to the principle, that where a suit has been commenced to enforce it, the equity fastens upon the land and no creditor can intervene to defeat the right under that proceeding. The *lispendens,* if nothing else, could exclude such creditor, but especially would this be the case where the land was impounded by injunction, as in this case: *Green* v. *Demoss,* 10 Hum.; *Brown* v. *VanLeer,* 6 Hum.; *Mills* v. *Harris,* 3 Head, 332.

The test as to whether a conveyance is fraudulent or void as to a creditor is, does it hinder him in enforcing his debt? Does it deprive him of a right which would be legally effective if the conveyance or device had not been resorted to? If so to the extent that the creditor's right is affected, a fraudulent intent accompanying the transaction, or it being voluntary and convey or being indebted beyond ability to pay, the conveyance is void. These principles are axiomatic, a sale of property whatever be the intent, exempt from execution, or a wife's realty that cannot be sold for the husband's debts, or any intent which the creditor could not reach by process of law, cannot be void as to such creditor, because he is not injured thereby.

This being so, assume the conveyances in this case to have been based on whatever motive you may choose, the creditor could not have been affected by them. The compromise was made of a claim that overrode these creditors. The son could have permitted the bill to have proceeded and the land would have been sold for the purchase money, which would have absorbed it and left creditors nothing. That he has agreed upon a compromise by which the father has it conveyed to himself and then gives it to his daughter-in-law and grand-children, does that change the result. If it had not been so done and the compromise never made, these creditors could have got nothing. They simply get nothing if the compromise agreement is allowed to stand, with the conveyances made in pursuance of it.

Again, if the compromise is to be set aside as intended to defraud creditors, the party must be allowed to stand in *statu quo* as at the time made, and then his bill be reinstated and the same result would follow. It could not be allowed, that one part shall be affirmed, by the present complainant, that is as to the part reserved by the father and the other be held void. There is no principle on which it can be split in parts in order to allow the creditor to squeeze his claim in, and take part of the subject of it. It must stand as a whole or be set aside as a whole.

Without further argument we hold, that as against the result of the *lispendens* then being prosecuted, and the compromise of the same affectuated by the conveyances attached, the complainant must take subject to

these, and that nothing has been conveyed which complainant could have held, if the compromise had not been entered into, and therefore he is not hindered in enforcing any legal right.

Respondents holding under the compromise agreement hold a title in equity superior to complainant's, and cannot be dispossessed of the land thus held. It will so be decreed and complainant's bill dismissed with costs.